**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In re:

**Noorjahan Haggerty, Inc.,**

    Debtor.

_____/

Case No. 22-40197-TJT
Chapter 11
Hon. Thomas J. Tucker

## DEBTOR'S AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

**PREPARED BY**:

WERNETTE HEILMAN PLLC
Ryan D. Heilman (P63952)
Attorneys for Debtor
40900 Woodward Ave., Suite 111
Bloomfield Hills, MI 48304
(248) 835-4745
ryan@wernetteheilman.com

## INTRODUCTION

    Noorjahan Haggerty, Inc. ("Debtor") proposes this plan of reorganization (the "Plan") for the resolution of outstanding claims against and interests in the Debtor pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Subject to the terms of this Plan, this Plan contemplates the Debtor's reorganization. The Debtor is the proponent of the Plan under Bankruptcy Code sections 1189(a) and 1129.

## BRIEF HISTORY OF DEBTOR'S BUSINESS, LIQUIDATION ANALYSIS AND PROJECTIONS

    Debtor operates an Indian cuisine restaurant in Livonia, Michigan. Debtor first opened the restaurant for business in late June of 2021 with the expectation that the COVID-19 pandemic was subsiding. Unfortunately, due to the Omicron variant, there was a substantial resurgence of COVID in the autumn of 2021, which significantly disrupted Debtor's business and contributed to Debtor being unable to meet its projected revenues. Because Debtor's revenues were substantially below expectations, Debtor was unable to make required rent payments resulting in eviction proceedings. To avoid eviction and to continue its operations, Debtor filed this Chapter 11 case.

Debtor's principals are Syed Mutaher (President) and Abdul Hayi (co-manager and head chef). Debtor's operations are also assisted by Sarowar Sumon (supervisor and manager) who is Mr. Hayi's son.

Debtor owns all of its own equipment and furnishings, and has no secured debt. Debtor estimates the value of its equipment and furnishings at $90,000 and the total value of its assets, as of the Petition Date at almost $130,000. Debtor estimates its total pre-petition liabilities at approximately $54,780. Schedules, ECF No. 20. Three Debtor believes it has paid all or most of its pre-petition tax liabilities, but has not yet prepared or filed its 2021 tax returns.

One tax claim has been filed against Debtor by the IRS asserting a Priority Claim under 11 U.S.C. § 507(a)(8) in the amount of $400.00. Two General Unsecured Claims have been filed against Debtor in the aggregate amount of $68,508.96. This includes a claim in the amount of $67,747.36 filed by Northville Retail Center Phase 2, LLC, Debtor's landlord for its operating location ("Landlord"). The debt to the Landlord appears to have been guaranteed by one of Debtor's principals, Mr. Syed Mutaher.

The Debtor's Liquidation analysis is attached as **Exhibit A**. All values stated in the Liquidation Analysis are based on Debtor's good faith estimates, and have not been subject to audit or appraisal. The estimates shall not be construed in any way as guarantees, warranties or anything more than current estimates, and shall not be binding on Debtor or any party-in-interest.

The Debtor's Projections are attached as **Exhibit B**, which show Debtor's Projected Disposable Income and how the Projected Disposable Income has been calculated. The projections are based on Debtor's current

## ARTICLE I
## DEFINITIONS, RULES OF
## INTERPRETATION AND COMPUTATION OF TIME

1.1  **Scope of Definitions.**

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined have the meanings given them in section 1.2 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given that term in the Bankruptcy Code or the Bankruptcy Rules.

1.2  **Definitions.**

1.2.1  "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of Debtor, including wages, salaries, commissions for services rendered after the Petition Date, Professional Claims, taxes accruing after the Petition Date, whether or not the last payment date is before or after the Confirmation Date, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c) of the Bankruptcy Code, provided, however, that this term does not include any portion of Allowed Secured Claims, whether or not all or part of

2

Allowed Secured Claim is entitled to priority under sections 503(b), 507, 363, or 364 of the Bankruptcy Code or otherwise. This definition does not apply to or include U.S. Trustee quarterly fees or any other amounts owed to the U.S. Trustee. Any references in this Plan to the term "Administrative Claim" shall not apply to the U.S. Trustee.

      1.2.2 "**Administrative Claims Bar Date**" means the deadline for requests for payment of Administrative Claims (or proofs of claims requesting Administrative Claim status if permitted by Court order), which shall be 45 days after the Effective Date, unless the Administrative Claim is of a kind that is subject to an earlier Bar Date, in which case the earlier Bar Date shall control. Debtor shall not be required to make any payments or distributions on account of Administrative Claims not properly asserted before the Administrative Claims Bar Date unless such date is extended by Order of the Court.

      1.2.3 "**Allowed**" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in the Class

      1.2.4 "**Allowed Claim**" means a Claim or any portion of the Claim,

      a. that has been Allowed by a Final Order of the Bankruptcy Court (or such other court or forum with jurisdiction to adjudicate the Claim and objections to it);

      b. as to which a Proof of Claim has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that the Claim is identified in the Proof of Claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been Filed within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied or overruled by a Final Order;

      c. as to which no Proof of Claim has been Filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or disputed, but solely to the extent of the liquidated amount and (ii) no objection to its allowance has been Filed by Debtor, within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court; or

      d. that is expressly Allowed in a liquidated amount in this Plan.

      1.2.5 "**Allowed Class . . . Claim**" or "**Allowed Class ... Interest**" means an Allowed Claim or an Allowed Interest in the specified Class.

      1.2.6 "**Allowed Interest**" means an ownership Interest in Debtor, which has been or is later listed by Debtor in its books and records as liquidated in an amount and not disputed or contingent; provided, however, that to the extent an Interest is a Disputed Interest, the determination of whether the Interest will be Allowed and/or the amount of any Interest will be determined in the manner in which the Interest would have been determined if the Chapter 11 Case had not been commenced; and provided further, however, that proofs of Interest need not be Filed in the Bankruptcy Court with respect to any Interests; and provided further, however, that Debtor, in its discretion, may bring an objection or motion with respect to a Disputed Interest before the Bankruptcy Court for resolution.

      1.2.7 "**Ballot**" means each of the ballot forms that is distributed with the Plan to Holders of Claims and Interests included in Classes that are Impaired under this Plan and entitled to vote under the terms of this Plan.

1.2.8 "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date.

1.2.9 "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District Michigan, or such other court that may have jurisdiction over the Chapter 11 Case.

1.2.10 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings in the Chapter 11 Case, and the Local Rules of the Bankruptcy Court.

1.2.11 "**Bar Date**" means the deadlines set, or to be set, by the Bankruptcy Court for filing proofs of claim in the Chapter 11 Case or any other deadline for the assertion of Claims, Administrative Claims or other rights to relief as set by Order of the Bankruptcy Court (which may include the Confirmation Order), the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Rules for the Bankruptcy Court for the Eastern District of Michigan.

1.2.12 "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Detroit, Michigan.

1.2.13 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.2.14 "**Causes of Action**" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Actions, unless otherwise waived or released by Debtor to the extent the Cause of Action is a Cause of Action held by Debtor.

1.2.15 "**Chapter 11 Case**", "**Case**" or "**Bankruptcy Case**" means this chapter 11 case number 22-40197, currently pending in the United States Bankruptcy Court for the Eastern District of Michigan.

1.2.16 "**Claim**" means a claim against Debtor, whether or not asserted, as defined in § 101(5) of the Bankruptcy Code.

1.2.17 "**Class**" means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.18 "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Case.

1.2.19 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.2.20 "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under section 1128 of the Bankruptcy Code to consider Confirmation of this Plan and related matters, as may be adjourned or continued from time to time.

1.2.21 "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.22 "**Creditor**" means any creditor of Debtor as defined in section 101(10) of the Bankruptcy Code.

1.2.23 "**Cure Claims**" means any amount required to be paid under section 365(b)(1) in connection with the assumption of executory contracts or unexpired leases.

1.2.24 "**Debtor**" means Noorjahan Haggerty, LLC and, after the Effective Date, Reorganized Debtor.

1.2.25 "**Disallowed Claim**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.2.26 "**Disposable Income**" has the meaning set forth in 11 U.S.C. § 1191(d).

1.2.27 "**Disputed Claim**" or "**Disputed Interest**" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest.

1.2.28 "**Effective Date**" means the fifteenth day of the first month after the Confirmation Order becomes a Final Order.

1.2.29 "**Entity**" has the meaning set forth at section 101(15) of the Bankruptcy Code.

1.2.30 "**Estate**" means the bankruptcy estate of Debtor created pursuant to section 541 of the Bankruptcy Code.

1.2.31 "**Exhibit**" means any exhibit or schedule attached to this Plan including any amendments and supplemental exhibits or schedules that may be filed subsequent to filing of the Plan.

1.2.32 "**File**" means to file with the Bankruptcy Court in the Chapter 11 Case or such other court with jurisdiction over the relevant subject matter.

1.2.33 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.34 "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

1.2.35 "**General Unsecured Claim**" means any Claim that is not otherwise an Administrative Claim, Priority Tax Claim, or Priority Claim. General Unsecured Claims include Claims of Creditors with contracts or unexpired leases that are rejected by Debtor under this Plan or otherwise.

1.2.36 "**Governmental Unit**" has the meaning set forth at section 101(27) of the Bankruptcy Code.

1.2.37 "**Holder**" means a Person holding a Claim, Interest, or Lien.

1.2.38 "**Impaired**" refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2.39 "**Insider(s)**" has the meaning set forth at section 101(31) of the Bankruptcy Code.

1.2.40 "**Insider Claim**" means a Claim held by an Insider.

1.2.41 "**Interest**" means the legal, equitable, contractual, and other rights of any Person with respect to equity securities of, or ownership interests in Debtor.

1.2.42 "**Interest Rate**" means the interest rate set forth in this Plan or, if no specific rate of interest is set forth in this Plan with respect to a Claim which is entitled to be paid with interest, shall mean (a) with respect to a Claim for taxes, the interest rate applicable under non-bankruptcy law, (b) for all other Claims entitled to interest under the Bankruptcy Code and this Plan, five percent (5%), or (c) if the foregoing Interest Rate is subject to any objection, such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.43 "**IRC**" means the Internal Revenue Code of 1986, as amended.

1.2.44 "**IRS**" means the Internal Revenue Service.

1.2.45 "**Landlord**" means Northville Retail Center Phase 2, LLC, Debtor's Landlord for its operating location at 17933 Haggerty Rd., Livonia, MI.

1.2.46 "**Liquidation Analysis**" means the liquidation analysis required by 11 U.S.C. § 1190(1)(B) and attached as Exhibit A.

1.2.47 "**Notice**" with respect to a notice to be provided to Debtor means a written notice delivered to and actually received by Debtor and Debtor's counsel at the addresses set forth in section 13.5 or such other address as is provided by Debtor or Debtor's counsel.

1.2.48 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

1.2.49 "**Petition Date**" means January 12, 2022, the date Debtor Filed its petition for relief in the Bankruptcy Court.

1.2.50 "**Plan**" means this plan for the resolution of outstanding Claims and Interests in the Chapter 11 Case, including all Exhibits, supplements, appendices, and schedules, either in its present form or as it may be altered, amended, or modified in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.2.51 "**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

1.2.52 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.2.53 "**Projections**" means the projections of Debtor's revenues, expenses, and income required by 11 U.S.C. § 1190(1)(C) and attached as Exhibit B.

1.2.54 "**Projected Disposable Income**" means the expected Disposable Income projected by Debtor as set forth in Exhibit B.

1.2.55 "**Proof of Claim**" means a proof of Claim Filed against Debtor in the Chapter 11 Case.

1.2.56 "**Professional**" means any Person retained in the Chapter 11 Case by Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise.

1.2.57 "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and before and including the Effective Date.

1.2.58 "**Pro Rata**" means (a) with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise and (b) with respect to Interests, at any time, the proportion that the number of Interests held by an Interest Holder in a particular Class or Classes bears to the aggregate number of all Interests (including Disputed Interests, but excluding Disallowed Interests) in such Class or Classes.

1.2.59 "**Reorganized Debtor**" means the Debtor after the Effective Date.

1.2.60 "**Retained Actions**" means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court before the date of this Plan.

1.2.61 "**Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

1.2.62 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed in the Chapter 11 Case by Debtor, as may be amended from time to time.

1.2.63 "**Unimpaired**" means, with respect to a Claim, any Claim that is not Impaired.

1.2.64 "**Voting Deadline**" means May 13, 2022, or any subsequent deadline that the Bankruptcy Court may set for the receipt of Ballots by Debtor or Debtor's agent..

1.3 **Rules Of Interpretation:** For purposes of this Plan, unless otherwise provided herein:

1.3.1 Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, include, both the singular and the plural.

1.3.2 Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter.

1.3.3 Any reference in this Plan to an existing document or schedule Filed or to be Filed means the document or schedule, as it may have been or may be amended, modified, or supplemented. Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, are incorporated by reference into this Plan for all purposes.

1.3.4 Any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns. Any reference to Debtor includes the Reorganized Debtor for all periods after the Effective Date.

1.3.5 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially on such terms and conditions.

1.3.6 The words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan.

1.3.7 Subject to the provisions of any contract, certificates of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. To the extent that reference to state law is required, the Plan is governed by the substantive law of Michigan.

1.4 **Computation of Time.** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 apply. Whenever any action is required to be performed or deadline expires on a specific date, if the

date falls on a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006), the action may be performed, or the deadline will expire, on the next day that is not a Saturday, Sunday, or legal holiday.

1.5 **References to Monetary Figures**. All references in this Plan to monetary figures refer to currency of the United States of America.

1.6 **Exhibits**. All Exhibits, including any Exhibits referenced in this Plan, are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not attached to this Plan, the Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from Debtor's counsel. **All Exhibits may be revised before the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court will constitute an approval of the Exhibits.

1.7 **No Admissions; Estimates of Claims**. Unless expressly stated otherwise, nothing herein will be deemed to be an admission by Debtor or to otherwise prejudice Debtor in any Claims objection or Cause of Action. All estimates of Causes of Action and Claim amounts listed in this Plan and Exhibits are current estimates only. All Claims amounts and classifications remain subject to the Claims Objection process.

## ARTICLE II
## CLAIMANTS THAT ARE NOT SUBJECT TO
## CLASSIFICATION AND ARE NOT ENTITLED TO VOTE ON THE PLAN
## ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

2.1 **Administrative Claims.**

Subject to the provisions of this Plan and upon occurrence of the Effective Date, as soon as possible after an Administrative Claim becomes an Allowed Administrative Claim or the date when an Administrative Claim becomes payable pursuant to any agreement between Debtor and the Holder of the Administrative Claim (but, in no event later than ten days thereafter), a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim or such other treatment that Debtor and the Holder of the Allowed Administrative Claim shall have agreed upon in writing.

2.2 **Priority Tax Claims.**

2.2.1 Debtor scheduled Claims of the IRS and Michigan Department of Treasury in unknown amounts in an abundance of caution. However, at the time of filing Debtor did not believe that it owed any tax liabilities. The IRS has filed a proof of claim asserting a Priority Tax Claim in the amount of $400. Debtor is reviewing this Proof of Claim as well as its books and records to determine if this amount is owed and if any other tax tax liabilities may be owed. The Holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of its Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in

exchange for, such Allowed Priority Tax Claim, payment of the outstanding amount of the Allowed Priority Tax Claim in equal monthly installments commencing on the date that is 60 days after the Effective Date, with interest accruing at the Interest Rate, calculated so that the last monthly payment will occur on or before January 10, 2025, the fifth anniversary of the Petition Date. Debtor may pre-pay any Priority Tax Claim. For the avoidance of doubt, all taxes of the type entitled to priority under 11 U.S.C. section 507(a) that have been assessed prior to the Petition Date are subject to this section 2.2.

2.2.2 Debtor reserves the right to commence or continue a challenge as to any Priority Tax Claim through the claims objection process set forth in Article XII of this Plan or through any appropriate adjudicative body with necessary jurisdiction, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims includes, without limitation, an objection to any assessment of Debtor's real or personal property that may have been made by the respective taxing authority.

2.3 **Professional Claims.**

2.3.1 **Final Fee Applications.** All final requests for payment of Professional Claims must be Filed by any deadline set by the Court or, in any event, no later than forty-five (45) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims and expenses will be determined by the Bankruptcy Court and paid by Debtor promptly after they are Allowed as set forth in Section 2.1 (in no event more than seven days after entry of the Order Allowing the Professional Claims), or as otherwise agreed in writing by Debtor and the Professional for reasonable payment terms.

2.3.2 **Post-Confirmation Date Retention.** Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date or to make any disclosures pursuant to Bankruptcy Rules 2014 and 2016 will terminate, and Debtor and Reorganized Debtor shall employ and pay Professionals in the ordinary course of business.

2.4 **Pre-petition Administrative Claims.** All Administrative Claims incurred before the Petition Date, including (but not limited to) Administrative Claims arising under 11 U.S.C. § 503(b)(9), if any, must be Filed as a Motion or Application by the Holder of such Claims by any applicable Bar Date as set by the Federal Rules of Bankruptcy Procedures, the Bankruptcy Court's Local Rules, or by Order of the Bankruptcy Court in this Chapter 11 Case. If any Administrative Claim has not been Filed by the Applicable Bar Date, the Administrative Claim shall be disallowed without the need for Debtor to file any objection to the Administrative Claim.

## ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER THE PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides Claims and Interests into two (2) Classes and treats them as follows:

3.1 **Class I**: Class I consists of all Allowed General Unsecured Claims. Allowed Claims resulting from the rejection of any contracts or unexpired leases as set forth in Article X shall be included as Class I General Unsecured Claims. As reported in Debtor's

Schedules, Debtor estimates the amount of all General Unsecured Claims to be $54,780.60. Two Proofs of Claim were filed in this Case asserting General Unsecured Claims. The Landlord filed a Proof of Claim asserting a Claim in the amount of $67,747.36, which had be Scheduled by Debtor in the amount of $51,441.50. Consumers Energy Company filed a Proof of Claim in the amount of $761.60, which had been Scheduled by Debtor in an unknown amount because Debtor had not yet received its monthly invoice as of the Petition Date. If both the Landlord and Consumers Energy Company Proofs of Claim are Allowed in the amounts stated on the respective Proofs of Claim, total Class I General Unsecured Claims shall be $71,848.06. If the lease with the Landlord is assumed, the total Class I General Unsecured Claims is expected to be substantially lower.

        3.1.1    Holders of Allowed Class I Claims shall receive a Pro Rata share of the Projected Disposable Income based on all Class I Allowed Unsecured Claims. Starting six (6) months after the Effective Date, and every six (6) months thereafter the Reorganized Debtor shall distribute all of its Projected Disposable Income to Class I Creditors (each an "Semi-Annual Payment"). The Semi-Annual Payments shall continue until the earlier of (i) payment of all Class I Claims in full or (ii) three years have passed since the Effective Date of the Plan. All Semi-Annual Payments shall be distributed to Holders of Allowed Unsecured Claims on a Pro Rata basis.

        3.1.2    The Debtor's Projected Disposable Income is set forth in Exhibit B at approximately $1,500 per month for the first year, equating to two Semi-Annual Payments of $9,000 each; $1,150 per month for the second year, equating to two Semi-Annual Payments of $6,900 each; and $1,900 per month for the third year, equating to two Semi-Annual Payments of $11,400 each. Accordingly, total Projected Disposable Income during the three-year life of the Plan is $54,600.

        3.1.3    Notwithstanding Section 3.1.1, above, in the event that Debtor rejects the lease with Landlord as set forth in Article X and relocates to a new location, Debtor's Projected Disposable Income shall be reduced due to transition and relocation expenses, and the Semi-Annual Payments set forth in Section 3.1.1 shall not commence until twelve (12) months after the Effective Date and Projected Disposable Income payable under the Plan shall be $45,600.

        3.1.4    If the Plan is not confirmed, Debtor estimates that Class I General Unsecured Creditors will receive a return on their Class I Claims of between 0 and 58% of the amount of their Allowed Claim. See the Liquidation Analysis attached as Exhibit A for more information.

        3.1.5    **This Class is Impaired.**

    3.1    **Class II**: This Class consists of the Claims of Interests of Debtor.

        3.1.1    The Holders of Allowed Interests of this Class will retain their Interests in the Reorganized Debtor in the same percentages as held in Debtor.

        3.1.2    **This Class will not be Impaired and are deemed to accept the Plan.**

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

    4.1    Upon the Effective Date, Debtor will become the Reorganized Debtor. The Reorganized Debtor shall continue operating Debtor's business, shall collect all revenues and income, and shall distribute such revenues and income as provided under the terms of this

Plan. During the Payment Period, the Reorganized Debtor shall retain Mr. Mutaher as its President, Mr. Hayi as its co-manager and head chef, and Mr. Sumon as a supervisor and co-manager. The Reorganized Debtor may retain other employees, including Insiders, at commercially reasonable rates of compensation.

4.2 **Retention of Causes of Action:** All Causes of Action not waived or released under this Plan, the Confirmation Order or any other Order issued by the Court shall vest with Reorganized Debtor.

4.3 **Assumption of Liability and Sources of Funds**:

4.3.1 Reorganized Debtor shall be responsible for satisfying the Allowed Class I Claims in accordance with the terms and provisions of this Plan.

4.3.2 The Reorganized Debtor will retain control of and be responsible for all of Debtor's operations after the Effective Date.

4.3.3 Debtor reasonably believes that future operations will enable the Reorganized Debtor to satisfy its obligations under the Plan. Other sources of cash may be explored and utilized by the Reorganized Debtor to the extent that such infusions are necessary or helpful to meet the obligations of the Plan, including post-confirmation loans or equity contributions.

4.3.4 As of the filing of this Plan, the Debtor has not reached an agreement with its Landlord regarding assumption of the lease for its current restaurant location. In the event that an agreement is reached, the lease will be assumed as provided for in Article X and the Debtor will make payments to Landlord as provided in any agreement related to the lease assumption or as required under 11 U.S.C. § 365. If, however, no lease assumption agreement is reached and Debtor rejects the lease, Landlord shall have a Class I General Unsecured Claim which will be paid as set forth in Section 3.1, above, and Debtor shall move to a new location.

4.3.5 The Reorganized Debtor may pre-pay any Claim at any time. The Reorganized Debtor may negotiate with the Holders of Claims to receive discounts, payment modifications or other accommodations, but no modifications to Reorganized Debtor's obligations under this Plan shall be binding unless set forth in writing. Upon payment by the Reorganized Debtor to any Claim Holder in the amounts required under this Plan or as otherwise agreed by the Claim Holder, the Reorganized Debtor will have no further obligation to such Claim Holder under this Plan, and the Claim Holder will have no further or continued rights or standing under this Plan.

4.3.6 Upon satisfaction of all obligations to all Claim Holders, the Reorganized Debtor will no longer be bound by the provisions of this Plan and will be entitled to conduct its business without Bankruptcy Court supervision under applicable non-bankruptcy law. Nothing in this Section shall be construed as waiving or limiting the Reorganized Debtor's rights and interests under this Plan, to enforce those rights and interests through the Bankruptcy Court, to dispute claims, to bring motions or pursue Causes of Action in the Bankruptcy Court or any other court, or to petition the Bankruptcy Court for the redress of any grievances.

4.4 **Professional Fees:** Any services performed or expenses incurred by any Professional on behalf of Debtor after the Petition Date but before the Confirmation Date will be Administrative Claims, will be paid by Reorganized Debtor as set forth in Article II and will be subject to the prior review and approval of the Bankruptcy Court. Any services performed or expenses incurred by any Professional on behalf of the Reorganized Debtor with respect to the Chapter 11 Case after the Confirmation Date will be an obligation of the Reorganized Debtor

and will not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Confirmation Date, no Professional will be required to disclose payments from Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of Reorganized Debtor shall be billed directly Reorganized Debtor, and the Bankruptcy Court shall review only that portion to which Reorganized Debtor objects. Reorganized Debtor must pay the portion not objected to in accordance with the terms of the invoice.

4.5  **Effectuating Documents**:  Reorganized Debtor is authorized to execute, deliver, file, or record such financing statements, contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan without further notice to or order, action or approval of the Bankruptcy Court.

## ARTICLE V
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

5.1  **Discharge of Indebtedness**:

5.1.1  **Discharge under 1191(a)**. In the event this Plan is confirmed under section 1191(a), except as otherwise explicitly provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims. Except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in sections 502(g), 502(h), or 502(i), in each case whether or not a Proof of Claim is filed or deemed filed pursuant to section 501.

5.1.2  **Discharge under 1192(b)**. In the event this Plan is confirmed under section 1191(b) of the Bankruptcy Code, as soon as practicable after completion of the Reorganized Debtor's Payments due during the duration of the Plan, the Court shall grant the Debtor and Reorganized Debtor a discharge of all debts provided in section 1141(d)(1)(A) and allowed under section 503 (the "Discharge Order"). Notwithstanding the forgoing, the court shall not grant the Debtor or the Reorganized Debtor a discharge of any debt for which the last payment is due after the first three (3) years of the Plan, or (ii) to the extent section 523(a) is applicable to a corporate debtor, a debt of the kind specified in section 523(a).

5.1.3  **1191(c)(3)(B) Provision.** For the purposes of 11 U.S.C. § 1191(c)(3)(B) and in the event that payments to any creditor are not made as provided in Article IV of the Plan to such creditor, then the creditor may make a written demand (the "Demand Notice") to the Reorganized Debtor which, at a minimum, must clearly and expressly identify the payments that the Creditor claims were not made. The Reorganized Debtor shall have sixty (60) days from the date the Demand Notice is received by the Reorganized Debtor to (a) cure the payment default or (b) make other mutually agreeable arrangements with the Creditor to resolve the identified payment default. If the payment default identified in the Demand Notice is not cured or not otherwise resolved as provided under the previous sentence, then the affected Creditor may reopen the Subchapter V Case and seek appropriate remedies provided under the Bankruptcy Code; provided, however, that if the Reorganized Debtor cures such the payment default

identified in the Demand Notice prior to the Bankruptcy Court entering an order authorizing any relief, the identified payment default shall be deemed cured and the Subchapter V Case shall be immediately closed.

5.2 **Injunction**. Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all individuals and entities that have held, currently hold, or may hold Claims or Interests against Debtor, or that are claiming by or through any such individual or entity, are permanently enjoined from taking any of the following actions against Reorganized Debtor or its property on account of any such Claims, debts, liabilities, or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or right of recoupment of any kind against any debt, liability, or obligation due to Debtor or Reorganized Debtor, whether such debt accrued before or after the Petition Date; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is inconsistent, with the provisions of this Plan.

5.3 **Subchapter V Trustee**. The Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in the Bankruptcy Code until the services of the Subchapter V Trustee are terminated as set forth in this section. Termination of the services of the Subchapter V Trustee shall occur upon the earlier of (i) all payments required by the Plan have been made by Reorganized Debtor, or (ii) the Subchapter V Trustee deems that her statutory obligations have been fulfilled and provides notice of such to Reorganized Debtor. Until termination of the services of the Subchapter V Trustee, Reorganized Debtor shall remain responsible for payment of the reasonable fees of the Subchapter V Trustee, and the Bankruptcy Court shall retain jurisdiction to determine any dispute regarding reasonableness of such fees or the date of termination of the Subchapter V Trustee's services. The Subchapter V Trustee's services will otherwise be terminated in accordance with 11 USC Sec. 1183( c).

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTION

6.1 No Interest on Unsecured Claims. Interest will not accrue or be paid on any General Unsecured Claim.

6.2 Delivery Of Distributions and Notices in General. Distributions to Holders of Allowed Class I Claims and Professional Claims will be made by Reorganized Debtor unless otherwise instructed by the Court or the Subchapter V Trustee. All distributions will be made, as applicable: (a) if a Proof of Claim has been filed: at the addresses set forth on the Proofs of Claim Filed by the Holders of Claims or Interests; (b) if the Holder has provided any written notices of address changes delivered to Debtor: at such address; (c) if no Proof of Claim has been filed and no notice of address change has been received: at the addresses reflected in the Schedules or the last known address; or (d) if any counsel has appeared in the Chapter 11 Case on the Holder's behalf, at the address of such counsel.

6.3 Undeliverable Distributions and Non-Negotiated Checks. If any distribution to a Holder of a Claim or Interest is returned as undeliverable, no further distributions to such Holder of such Claim or Interest will be made unless and until Reorganized Debtor or Subchapter V Trustee (as applicable) is notified of the then-current address of such Holder of the Claim, at which time all missed distributions will be made to the Holder of the Claim without interest. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within ninety

days after the issuance of the check, the check may be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks will be held by the Reorganized Debtor until the earlier of (i) such distributions are claimed by the valid Holder of the Claim or (ii) ninety days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts will revert to the Reorganized Debtor free of any restrictions and the Claim of any Holder or successor to such Holder with respect to the distribution will be deemed discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. The language in this section will not apply to the U.S. Trustee.

6.4     Fractional Payments. Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars are not required. Payment of fractions of dollars that would otherwise be distributed under the Plan will be rounded to the lower whole number of dollars.

6.5     If the date for any payment or action required of Debtor or Reorganized Debtor under this Confirmation Order or the Plan falls on a date which is not a Business Day, the due date for such payment or action shall automatically be extended to the next occurring Business Day.

## ARTICLE VII
## MODIFICATION OF THE PLAN

7.1     **Modification of Plan**.  Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in the Bankruptcy Code and Bankruptcy Rules, Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend or materially modify the Plan, one or more times before the Confirmation Date. After the Confirmation Date, Debtor or Reorganized Debtor may, with leave of the Bankruptcy Court and upon notice and opportunity for hearing to the affected Creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan. Any amendments to this Plan will otherwise be in accordance with 11 USC Sec. 1193.

7.2     **Effect of Confirmation on Modifications**.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

7.3     **Revocation or Withdrawal of the Plan.**  Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If Debtor revokes or withdraws the Plan, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, will be deemed null and void; and (3) nothing contained in the Plan will: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other Person.

# ARTICLE VIII
# JURISDICTION OF THE COURT

8.1     **Jurisdiction**.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction with respect to:

8.1.1     The classification of the Claim of any Creditor and the re-examination of Claims Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors.  The failure by Debtor to object to, or to examine any Claim for the purposes of voting, will not be deemed to be a waiver of any right to object to, or reexamine the Claim, in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor will not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

8.1.2     The determination of all questions and disputes regarding title to the assets of the estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between Debtor and any other party.

8.1.3     The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

8.1.4     The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

8.1.5     The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor, Reorganized Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

8.1.6     The review and approval of all Professional Fee applications for services rendered before the Confirmation Date and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date to the extent that Debtor disputes all or a portion thereof.

8.1.7     The entry of an order determining the validity of any Lien.

8.1.8     The entry of an order concluding and terminating this Case.

# ARTICLE IX
# TITLE TO PROPERTY

9.1.     **Revesting of Assets**.  Except as otherwise explicitly provided for in this Plan, on the Effective Date, all property held by the Estate (including all Causes of Action) will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, right, and Interests of Creditors and equity security Holders. As of and following the Effective Date, the

Reorganized Debtor, as provided for under the terms of this Plan, may operate Debtor's business and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order. All Avoidance Actions not waived or released under this Plan or other Order of the Bankruptcy Court shall vest with Reorganized Debtor and Reorganized Debtor may pursue, settle and compromise any or all Avoidance Actions subject to notice and a hearing. Notice of any compromise need be provided only to those parties that have requested notice in the Bankruptcy Case. The following is added to the end of Section 9.1: If this case is converted to a Chapter 7, all property vested in the Debtor and acquired post-confirmation will re-vest in the Debtor and become property of the Chapter 7 estate.

## ARTICLE X
## EXECUTORY CONTRACTS

10.1 **Assumption of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases of Debtor shall be deemed assumed except the unexpired lease entered into between Debtor and Landlord for the premises on which Debtor operates its restaurant business (the "Landlord Lease"). For all contracts and unexpired leases assumed under this Section, Debtor shall pay all amounts owed under the contract or unexpired lease within thirty days after the Confirmation Date.

10.2 **Assumption or Rejection of the Landlord Lease.** At any time on or prior to the Confirmation Date, Debtor may assume the Landlord Lease by providing written notice of such assumption to the Landlord. Upon assumption, Debtor must comply with all requirements for assumption set forth in Section 365 of the Bankruptcy Code except as otherwise agreed between Debtor and Landlord. If the Debtor does not provide such notice to Landlord on or prior to the Confirmation Date: (i) the Landlord Lease shall be rejected and Debtor shall have a period of forty-five (45) days to vacate the premises, and (ii) Debtor shall remain responsible for all lease payments through and including the last day that Debtor remains in possession of the leased premises, and (iii) Debtor shall pay Landlord's Claim as a Class I General Unsecured Claim.

## ARTICLE XII
## OBJECTIONS TO CLAIMS

11.1. **Timing of Objections:** Reorganized Debtor may object to the allowance of any Claim, whether listed on the Schedules filed by Debtor, or filed by any Creditor, on or before the later of (a) sixty days from the date of filing of any Proof of Claim or (b) six months after the Effective Date.

11.2 **Objections to Liens:** Reorganized Debtor may object to any Lien or security interest within the time period set forth in Section 12.1 or after any attempt by a Creditor to enforce the Lien, except that Reorganized Debtor may not file an objection to any Lien that is the basis of a Class I or II Claim Allowed under the terms of this Plan.

12.3 **Claims Bar Date**: Except as provided herein or otherwise agreed in writing by Reorganized Debtor, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date (or, for a Claims Bar Date after the Effective Date, as of the applicable Claims Bar Date) without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been held timely Filed by a Final Order.

12.4 **Allowance of Clams – No Preclusion**: The allowance of any Claim, either after the Filing of an objection or as a result of no objection having been Filed, shall in no event create any estoppel argument against Reorganized Debtor or any other party, whether or not affiliated with Reorganized Debtor. This provision shall be given a broad interpretation and shall, without limitation, prohibit the use of any argument of res judicata, collateral estoppel, claim preclusion, issue preclusion, or judicial estoppel in the event of any current or future litigation between Reorganized Debtor, an Affiliate or Insider of Reorganized Debtor, or any other Person with the Clam Holder as a result of allowance of a Claim or the absence or resolution of any objection, with the sole exception that the allowance of the Claim sets the amount of the Claim as against the Reorganized Debtor for purposes of this Plan and distributions under this Plan.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1 **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor, Reorganized Debtor and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims or Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan, or is deemed to accept or reject the Plan), and all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

13.2 **Additional Documents**. On or before the Effective Date, Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor, Reorganized Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.3 **Reservation of Rights**. Except as expressly set forth in the Plan, the Plan will have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of Debtor with respect to the Holders of Claims or Interests before the Effective Date.

13.4 **Successors and Assigns**. The rights, benefits, and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Person.

13.5 **Service of Documents.** After the Effective Date, any pleading, Notice, or other document required by the Plan to be served on or delivered to Debtor or Reorganized Debtor must be sent by overnight mail, postage prepaid to:

Noorjahan Haggerty, LLC
c/o Syed Mutaher
537 Singh Dr.
Sterling Heights, MI 48310

*with a copy to:*

Abdul Hayi
17933 Haggerty Rd.
Livonia, MI 48152

Notice to Holders of Claims may be made to the addresses as set forth in Section 6.2.

13.6 **Entire Agreement.** Except as otherwise stated in this Plan, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.7 **Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without Debtor's consent; and (3) nonseverable and mutually dependent.

13.8 **Limitations on Operations**. If the Reorganized Debtor has made all payments and distributions required under this Plan, all restrictions, negative covenants, and other limitations on Debtor's operations provided herein or in the Confirmation Order will terminate.

        /s/ Syed Mutaher
        By: Syed Mutaher
        Debtor's President

Respectfully submitted,

WERNETTE HEILMAN PLLC

/s/ Ryan D. Heilman
Ryan D. Heilman (P63952)
Attorneys for Debtor
40900 Woodward Ave., Suite 111
Bloomfield Hills, MI 48304
(248) 835-4745
ryan@wernetteheilman.com

Dated: April 20, 2022